Good morning. Good morning. May it please the court... Before the time starts, are you going to be taking all the time? I'd like to reserve four minutes for a bottle of... Well, and what about the person sitting there? Oh, that's my co-counsel. He won't be arguing. Okay. Thank you. All right. Okay. Start over. Good. Sorry. May it please the court. Sanford Weisbruch for Appellant Moldex. And you wanted to take how long? Four minutes, please. Thank you. Thank you. Since 1982, Moldex has been producing earplugs in a very distinctive yellow-green color. It has sold almost two billion sets of these earplugs. It has invested millions of dollars in advertising them. In 2009, McKeon, the defendant, came into the market with a very closely similar color earplug. And in 2010, McKeon tried to get Walmart to replace Moldex's yellow-green earplug with McKeon's on its shelves. This case presents a clear case of why trademark protection is important. Moldex's substantial investment in this shade, which has come to signify that this shade is made by Moldex, should not be able to be co-opted by McKeon. And this case was erroneously pre-terminated at the summary judgment stage. Now, I'd like to go into why the district court error. The district court said, basically, that the yellow-green shade, in addition to having source-identifying aspects, which is the heartland of trademark protection, it also is visible against skin, so it has some aspect of function to it. And because it has some function, regardless of whether there are many other colors that could accomplish the same function, I'm going to stop there and find that this is functional and grant summary judgment to McKeon. Now, that is error clearly under Qualitex, and that's the leading case that I'd like the court to consider. Qualitex is a Supreme Court case decided in 1995, and like this case, it involved a shade of color. So here we have a green-yellow shade of earplugs, and in Qualitex you had a green-gold shade of dry-cleaning pads. And the court held that you have to proceed and consider, are there other colors that are available? And the court recognizes that the Qualitex green-gold shade had a source-identifying aspect. It told the public, this is made by Qualitex. It also had another function, which was to hide stains on these dry-cleaning pads, because they might become stained from clothes. And so it did have a function, and the court didn't stop there. It said, you have to consider how many colors are available as alternatives, and on that basis it reversed, actually, the Ninth Circuit and reinstated a judgment in favor of the plaintiff. Now here, again, our district court stopped after finding that the yellow-green shade of Moldex's earplugs has some function. It did not proceed further, except in a footnote in the alternative, which is footnote 7 of the court's decision. It did not proceed to consider how many alternatives there are. Counsel, let me ask you about Qualitex in the district court. I went back and looked at the briefing that your client filed, and you did raise Qualitex in the district court. In the district court's order, there's no mention of Qualitex. I'm trying to understand how that happened. Was there anything that you said, you, meaning your client, said to the court, well, actually, you don't need to apply Qualitex? Is there any taking that back, in a sense? Not at all, and we disagree with our adversary's assertion that we waived the point. And I'd like to refer the court to excerpts of Record 712, because on that page, we very clearly quote Automotive Gold, which is actually this court's decision. It didn't involve a color, but discussed colors, discussed Qualitex. We quoted Automotive Gold's quotation of Qualitex, and the specific quote, I'm going to paraphrase it, is, since other colors are equally usable, this is not a function within the meaning of trademark law. And so it was front and center in our briefing, and in fact, McKeon responded. This is all in one joint brief. It's all in the excerpts of Record 712. McKeon actually responded and said, don't look at Qualitex. Don't look at Automotive Gold. Those cases are an apposite. So we had relied on them. McKeon said, don't rely on them. Perhaps that's why the district court didn't discuss them. Maybe it agreed with McKeon erroneously, in our view. But certainly, in our opinion, the district court at least should have explained why those cases were an apposite, with all respect to the district court. So that's a possible explanation, but in reality, I don't know exactly what the district court was thinking on this. So just before I go to the facts, very briefly, I think a great statement of the rule post-Qualitex is from the Second Circuit's case in fabrication. And as I mentioned, Auto Gold discusses color but didn't involve a color. Fabrication Enterprises is a recent Second Circuit case that did involve a color. And the court said, a color, even one that contributes to the function of the product, may be protected unless the cost to competition of precluding competitors from using the color are too high. And that was also a summary judgment case. The district court had granted summary judgment, Second Circuit reversed, remanded for further proceedings. So these functionality issues where there's disputed issues of material factor, they're going to juries? Yes. Well, if a jury has been timely demanded, it would go to a jury. That's true. And in fact, Qualitex has a discussion of this, because one of the arguments that was made in Qualitex was, it's too hard for juries to distinguish between one shade of color and another. And the Supreme Court said, you know, look, this isn't that much different from a jury distinguishing between two different similar but different words, which it does all the time in trademark cases. It's the same. And the Supreme Court said, that's fine. We understand that that's going to happen in these cases. So tell me your best argument on what the legal error was in analyzing functionality, because obviously, even though that would be a jury question, if there aren't material issues, if there are not tribal issues of material facts, then you still could have summary judgment on functionality. So what's the legal error and what are the disputed facts? The plainest legal error in the district court's decision was not to consider the availability and which colors were available and whether that was enough competition available. So he didn't engage in that inquiry. Now, in a footnote, in the alternative, this is footnote 7, the district court did discuss, well, how many colors are there really? And that was a second legal error. And the reason why that was a legal error is the district court said, look, I'm not going to consider color shades. I'm going to say that the only available colors here are yellow and green and perhaps orange. I'm not going to distinguish between shades of those colors. And the only supporting evidence that the district court cited there was a McCarthy treatise. And McCarthy's treatise actually acknowledges that what he's saying there is his own opinion, which disagrees with courts like the Eighth Circuit and like Qualitex, which explicitly hold that color shades are something that can be considered and addressed. And on the facts here, we put in expert testimony by one of the leading color experts. This is an excerpt of Record 54 that said that there are actually hundreds of greens and yellows that are distinguishable. We're not trying to take all of green or all of yellow. There are a number of shades available that others could use. There are a number of mixed patterns. Well, Kermit wants a certain stage, a certain color. Kermit the Frog wants a certain color of green, so you can't take all green. No, we can't and we don't want to. We've actually specified, and some of the cases, including the Eighth Circuit's decision and the Master Distribution case, refer to this color standard called the Pantone system, which is actually a mathematical, and I'm not a color expert, so I don't want to get into too much detail, but it's a way of using light to actually measure color. And we, in this case, have limited our claim to a very narrow swath of those shades. And 3M, which also has a registered trademark on a yellow earplug, has also, in this litigation, in an attempt to sort of help resolve it, and this is in the record also, it's at ER 188, has said, sorry, that's the trademark registration, it's ER 931, 3M has said, here's how we view our color. We're not claiming all of yellow. We're claiming a narrow band of yellow and the rest is fair game. So we believe we put on substantial evidence that both yellow, green, and orange, other shades within those families, but also things like blues and reds, and also mixes and matches and patterns, like consider a striped earplug, for example, are available to competitors. And again, we're at the summary judgment stage, and we think that that should have been allowed to go forward, let the jury consider, well, do they agree with Moldex or McKeon that there are enough alternatives out there to supply competition? That's the Qualtech standard. The only other thing I'd like to mention, and I referred to it briefly, and I think it sort of drives home why there's a real source identification concern here, which again is the heartland of trademark law, is this episode in 2010 where McKeon, having come out with its own very similar shade, actually asked Walmart, let us replace our earplugs with Moldex's on your shelves in this same color. And we don't think that they would have done that, or at least a reasonable jury could find, if they weren't trying to sort of use our source identification benefit and sort of take away our consumers. And we think that that is one of several issues that should be tried as the case moves forward. The court has no further questions. I have just one question out of curiosity more than anything. Why hasn't your client tried to register the color? My client? So part of the reason is because we've been using it for such a long time, since 1982, and we've actually had success in enforcing the mark. Registration is not a prerequisite to enforceability. It comes with certain benefits, to be sure. Right. It seems odd that your client has forgone those benefits when, as you said, it's been using the color for so long, and it's such an important part of the... I think the clearest answer I can give, and the correct answer, is that because we've had success so far with an unregistered mark in terms of enforcing it until now, we haven't felt the need to go through the registration process. Is that an onerous process? It's not especially onerous. It can involve a challenge. You know, if you file... You were under the radar. Yes. Well, I don't think we were. And if you register, then you put yourself a little above the radar, and there can be a challenge, right? Yes, although I would respectfully submit that we've been above the radar in terms of publicly producing the CR plug and claiming our trademark rights for a long time. So my best answer, again, is that we've had success in this status. Okay. Thank you. Good morning. Good morning, Your Honors. Robert Helfing for the appellee, McKee and Products. May it please the Court. The court found, the district court in this case, found that the bright green color has utilitarian functionality. Moldex has no real basis to dispute that, and they really haven't disputed it. So what they've done now is to try and voice this additional theory, this aesthetic functionality theory, which they didn't even raise in the court below. In fact, they pointed out they distinguished cases that we were talking about, saying, well, they apply even though they relate to aesthetic functionality. Counselor, do you agree that Qualitex is the governing standard when it comes to colors and trademarks? It is certainly a case that bears on the issue, but Qualitex is a 1995 case. This is an evolving area of law. You'll notice that my colleague didn't even refer to the traffic devices versus marketing case. That's a 2003 case. In that case, the Supreme Court says, if you find utilitarian functionality under those three factors, you're done. It doesn't have to be essential. I mean, I didn't see anything in traffic that says we overrule Qualitex holding that it must be essential to qualify as functionality. Is there something there? Has the law changed since Qualitex? It is essential, but in this case, the green is essential. Okay, but two questions here. The district court, in applying the functionality test, never cited Qualitex, and I don't think it ever saw any analysis at all in its order that it be essential. Is that correct? I don't recall that it did. Okay, so if that's the case, then how can we say the district court applied the correct analysis if it didn't address whether the color, even if it had some functionality, whether it was essential, that functionality? Well, I don't think Qualitex addressed what's essential, and I don't think that the court seems to be applying a special meaning to the word essential. Well, no, the district court didn't use the word essential in its order, correct? Again, I don't remember the exact language. Well, here's what I'm trying to get at, is that in Qualitex, the pads had some functionality. The court said this green color had some functionality because it covers the stains. But even though it has some functionality, the functionality was not essential to the product, and therefore the company could trademark that color green on the pads. I didn't see that level of nuanced analysis by the district court, where, yes, there's some functionality there. The marketing for the products from Old Ex's Earplugs says there's some functionality in the worksite. You can check the plugs. But did the district court ever take the next step and say, yes, there's some functionality, but is it essential, the color? Is the color green essential to the functionality of these earplugs? Well, again, Your Honor, you keep on emphasizing the word essential. All that needs to be shown under the factors set forth by this court is that it provides some utilitarian advantage. That's all that essential means. Well, really? When I think something's essential, that doesn't mean just some. That means it's essential. Like, take an earplug. I have a yellow earplug and an orange earplug, which I've had for years, and how are these two colors, how is this yellow, essential to the functioning of this earplug? I think the court did address it because one of the arguments that was made was that it's only sort of an incidental type of function. The purpose of an earplug is to block sound. It's not to provide some kind of a color. But what the court said was that that doesn't matter. It can be an incidental functionality. And we cited a number of cases where that was the case. In fact, some of them even talked about color as being an incidental disqualifying functionality. In fact, it was even in an earplug case. The Patent and Trademark Office rejected orange for earplugs because it found that orange, for the very reason that the district court in this case found functionality. It found that orange was there so that it would be visible. Now, again, the purpose of an earplug is the essential purpose, as Your Honor seems to be defining it, is not to provide a color or even to be visible. But in that case, the court said because it has that functionality, we are not going to allow a competitor or a company to get a monopoly over this color under the guise of trademark law. Well, but I think that what we're touching on a little bit here is that in Qualitex and Automotive Gold, which was a 2006 case of this court, they held that aesthetic features, that it's appropriate for courts to inquire as to alternative designs as part of the functionality analysis. And where was that done here? And if it wasn't done, then how can summary judgment be the death knell on functionality? Because traffic said and clicks, this court also said it clicks and in Talking Rain, two cases that came after Qualitex, that after you satisfy the three factors of utilitarian functionality, you're done. You don't go into aesthetic functionality. You don't have to. If it provides a utilitarian advantage, then it's disqualified whether or not they're all alternatives. Why should anyone have the right to monopolize this particular feature, this useful feature, without a patent, to be able to monopolize this particular feature of an airplane? Because they're stating the purpose of it over and over again. They emphasize the functionality of their own color. But if that analysis is correct, then how do we get to the Supreme Court's decision in Qualitex? How do you square Qualitex with what you just said? Well, Qualitex is a 1995 case. So you're saying Qualitex has been overruled? I don't think it's been overruled. I don't see where it's inconsistent. But in Qualitex, the color of the pads had some functionality, yet the company could still trademark it. Well, okay, Qualitex, what it said was the pads needed some sort of color to hide stains on this cleaning pad. Any color would have done. I don't think that was the basis of the court's ruling. I think that was really just sort of an incidental feature of that opinion. I don't think it focused on that. But Traffics and Talking Rain and Clix specifically said that once you satisfy those three features, you're done and you don't need to consider alternative colors or, I'm sorry, alternative types of products. So, to me, Traffics is really the controlling law here. If, in fact, Qualitex said what Your Honor says it might have said, then I would say that it is overruled by Traffics. But I don't think the Traffics Court needed to go that far and it didn't because I don't think that was the basis of the Qualitex ruling. They've mentioned it. So you understand Qualitex in terms of, you know, in Qualitex, we know what Qualitex held. It held that, in this case, the company could trademark the color on these pads. Correct. Why was that okay in Qualitex as opposed to this case? Why is it not okay here? Because, in that case, there was no – that court didn't find that that had utilitarian functionality. So you're saying in Qualitex, the court said that the color had no utilitarian functionality? Well, except to the extent that it said that it does cover up stains. So it had some. It has some. Okay, so if it had some, how is it different than this case where, we'll concede, there is some utilitarian nature to the color. How is Qualitex – I mean, because, you know, we have to write an opinion here, and I'd like to not get reversed by the Supreme Court, and so we have to be consistent with a case like Qualitex. So I'm trying to understand if we're going to go your way, how do we – we can't say it's overruled, so how do we deal with that case? I wish I could say that the law of functionality and trademarks is set out perfectly and it's completely logical. I'm afraid I can't do that. I'm not asking you to say that. To the extent that Qualitex says that, it is somewhat contrary to traffic and talking rain and clicks. But those cases came after Qualitex. So if you really want my opinion, if you don't want to be reversed, you follow the Supreme Court's last statement on it, which was traffic, which also cited Qualitex. They were certainly aware of Qualitex. And so were those other two, the Ninth Circuit cases as well. Okay. So I don't think there's any doubt that it provides this utilitarian advantage, and they don't deny it. They can't. They tout it in their advertising. Those are the first two talking rain factors. The third talking rain factor is that it achieves economy of use. The court found that the facts were neutral on that because their own VP testified that it didn't really affect price at all, the price of manufacture. Based on that, the district court said there's utilitarian functionality as a matter of law. That issue, that question is reviewed for clear error. That's the standard. And we cited the cases that apply that standard. So you don't need to go any under traffics in the two. This is a summary judgment case, right? Yes. So why wouldn't we just review it de novo to see whether there was a tribal issue of fact? I think you do renew it de novo to some extent. But there's no factual finding that the district court makes on a summary judgment, really, is there? It is. The finding was the functionality. And the cases that we cite, and I can find them here if you want to give me some time. If there were a tribal issue on functionality, that would go to the jury, though, right? It's not a legal question that the court just decides on its own, is it? The court made a factual finding. There are cases that say that that is reviewed for clear error. Well, except on the functionality, if you make it as a legal determination in summary judgment, it would have to be based on undisputed facts. And if there was a material dispute of facts there, then for summary judgment purposes, you can't make that, right? That's true. I mean, that's the framework we're looking at. All I can do is refer you to Ninth Circuit Authority and Clamp Manufacturing v. ENCO and Vision Sports v. Melville, which says that the issue of functionality is a factual question that's reviewed for clear error determination. It's reviewed for clear error. Did the district court ever say, I find, as a matter of fact, functionality? Again, Your Honor, I can't remember exactly. As I recall reading the order, it didn't issue findings of fact and conclusions of law. I believe that's correct. But it did find that there was functionality. Sure. Well, okay. We understand your point. The functionality of the product. But they don't really even dispute that. They don't dispute the functionality of it. Well, I think they dispute how functional it is. Isn't that what this case really boils down to? I think both sides agree there's some functionality. You say it's more functional than they say that it is. Well, I think we're back to the original point that you raised, Your Honor. So let me cite a few more cases. In my papers, I talk about a case that had to do with fence capping. Fence capping is put on top of fences in order to protect exposed ends of the wiring. In that case, the color of the fence capping was, I can't remember, was green or bright green or bright orange or something. And the purpose of that was to make it visible. That was the express purpose. The court found that that was functional. It had utilitarian functionality and denied protection to that color for that fence capping, even though the purpose of fence capping is not to be visible. The purpose of fence capping is to protect people against the exposed ends of the fence. We cited several cases that did the same thing, including, again, the Howard S. Light case, where the Patent and Trademark Office found the same thing for earplugs, orange earplugs. It is the identical facts, except it was orange instead of green. It said, again, the purpose of earplugs is to block sound. But they said that this was used for industrial purposes to be seen, and so the visibility of it was enough functionality to not allow the applicant to get a monopoly over this color, even though it's, if you want to call it that, an incidental functionality. Was there actual evidence taken in that case? I don't believe so, but there are other cases. There was one with a telephone booth, an emergency telephone booth that was colored. Again, the purpose of a telephone is remote communication. It's not to be seen, but the court in that case, and we'll call the name of it offhand, but it's in our papers, said that's functionality. You can't get protection for that. Again, in our papers, there are several cases cited, a number of cases cited where that's the case. All right. You have two seconds. Two seconds. Now you have zero, and the clock is going up. Well, I wanted to talk about the other grounds, because they didn't, but there are other grounds. Well, you know, your time's up. We have read your briefs on those, counsel, and we're aware of the other items you have. Okay, thank you very much. Thank you. Thank you, counsel. Thank you. So I'm keeping him to his time, so I'm keeping you to your time. Understood. Thank you. I'd like to start with the light case that was by the TTAB. It did not discuss Qualitex, even though it came after Qualitex. We think it's entitled to little to no weight because of that. I'd like to next talk about this primary versus secondary function. Let's assume this is the primary or a primary function is to be visible. The case should still be decided under Qualitex and that standard, and the reason is because this essentiality standard in the case of colors has to look at is a particular color essential for that purpose? And here we've put in substantial evidence to get past the summary judgment stage on that. Qualitex, of course, involved color, and the notion that it might have been overruled or narrowed by traffics is just incorrect. Traffics did not involve a color. It actually does discuss and reaffirm Qualitex. It reaffirms this essentiality test, which we think we get past because, again, our distinctive yellow-green shade is not the only color that can be used in this context, so we think we survived that test. And another point that's worth noting about traffics is that, again, it didn't involve a color. It involved sort of a design of something to hold up a traffic cone, basically, a spring design, and there actually was an expired utility patent, and both this Court and the Supreme Court have noted that, in such cases, you're more likely to be functional. Our case doesn't involve an expired utility patent, so that's a key feature that should be kept in mind, both with regard to DIS golf, which is this Court's decision, also involved an expired utility patent, and traffics. I'd like, in any event, to walk through the talking rain factors really quickly because we disagree. Even if those factors were applied absolutely verbatim to our case, we think we still pass summary judgment. Now, those factors are, is there a cost difference? The District Court here found, no, any color is about the same to produce, so that's neutral. The District Court found that there's some function here, and that he weighed very heavily. That was at ER 7, but if that were the case, Qualitex couldn't come out the same way it did because, as Judge Owens noted, there was some function there, too, and if you stopped the inquiry there, you wouldn't even go any further. Similarly, in the Second Circuit's case, if you stopped by saying that the exercise bans told you which resistance levels they were, you wouldn't go any further, but we know the case came out the other way. In terms of advertisements, I'd like to refer the Court to ER 800. Moldex, to the extent it has advertised the visibility of the plugs, has done it in conjunction with the fact that it is source identifying. So this ad at ER 800 says, this green shade is a trademark of Moldex, and it provides for easy compliance checks. We think that that's at most ambivalent, and even if it weighs slightly in McKeon's favor, it really has to be balanced against the key factor, which is how many competitive alternatives there are, which is the fourth factor. So that's a determination for the jury to do, and this Court should not have stepped into the jury's shoes and done that. The cases that were cited, clamps and vision sports, are not summary judgment cases. Those are preliminary injunction cases in which the District Court does make findings of fact and is reviewed for clear error. Here, all the District Court was supposed to do was say, is there enough evidence that reasonable jurors could decide in Moldex's favor? It did not do that. In fact, it applied the opposite standard and said, is Moldex entitled to a directed verdict? That's not the standard when Moldex is the one who's trying to survive summary judgment. Finally, the Bauman case, which is this fence capping case that was referred to, it's an out-of-circuit District Court case. It actually acknowledges that different courts sort of disagreed with it and that it's a difficult area, and we would respectfully submit that it's incorrect and at the very least that that case was decided on its facts and this case should be decided on its separate facts by a jury past the summary judgment stage. Unless the Court has any questions, I request reversal, please. We don't. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Watford, Owens